James Hernandez, Esq.
The James Hernandez Law Firm, PLLC
2412 Woodhead
Houston, TX 77019
james@jhernandezlaw.com
*Attorney for Petitioner*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **JUNIOR ALONSO ARCHAGA,** | ) | Case No. _____ |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **PETITION FOR WRIT OF** |
| | ) | **HABEAS CORPUS** |
| **KRISTI NOEM**, in her official capacity as | ) | |
| Secretary of the Department of Homeland | ) | |
| Security**; PAMELA BONDI**, in her official | ) | |
| capacity as Attorney General of the United | ) | |
| States**; TODD LYONS**, in his official | ) | |
| capacity as Acting Director and Senior | ) | |
| Official Performing the Duties of the | ) | |
| Director of U.S. Immigration and Customs | ) | |
| Enforcement; **MIGUEL VERGERA,** in | ) | |
| his official capacity as Field Office Director | ) | |
| of the Harlingen Field Office of U.S. Immigration | ) | |
| and Customs Enforcement, Enforcement and | ) | |
| Removal Operations; **WARDEN** in his official | ) | |
| capacity as Warden of the Port Isabel Detention | ) and | |
| Service Center. | ) | |
| | ) | |
| *Respondents*. | ) | |

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

1. Petitioner, JUNIOR ALONSO ARCHAGA, by and through undersigned counsel, James Hernandez of the James Hernandez Law Firm, PLLC respectfully petitions this Honorable Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 to challenge his ongoing and unlawful civil immigration detention by the United States Department of Homeland Security ("DHS") and its agents. Petitioner is a Honduran National who has lived in the United States since 2019 and now resides at the 27991 Buena Vista Blvd., Los Fresnos, TX 78566, within the Southern District of Texas.

2. Petitioner entered the United States on or around 2019. He sought protection from persecution. He is not classified as an arriving alien and has been living in the United States for around six years.

3. On January 30, 2026, Immigration and Customs Enforcement ("ICE") took custody of Petitioner during an ICE enforcement operation conducted in a public area and placed him in immigration detention. He had not committed a crime.

4. DHS has taken the position that, based on *Matter of Yajure Hurtado* and subsequent agency guidance, Petitioner is categorically ineligible for any custody redetermination before an immigration judge and may be detained for the duration of his removal proceedings absent discretionary parole. The Immigration Judge has agreed with that position.

5. Petitioner now faces prolonged and potentially indefinite civil detention without any meaningful opportunity for an individualized determination of whether his continued confinement is necessary or lawful. DHS has not conducted any neutral, individualized assessment of Petitioner's danger to the community, risk of flight, or suitability for less restrictive alternatives to detention.

6. Petitioner has no criminal convictions, no history of violence, no pending criminal charges,

and has consistently complied with all immigration requirements. His continued detention is not based on any individualized finding that confinement is necessary to serve a legitimate governmental purpose.

---

In any event, *Yajure Hurtado* is *ultra vires* of the Board's delegated authority because it effectively rewrites binding Attorney General custody regulations—without rulemaking—by converting a narrow, regulation-based "arriving alien" bond bar into a sweeping prohibition for virtually all noncitizens charged as present without admission. Compare 8 C.F.R. §§ 1236.1(d)(1), 1003.19(h)(2)(i)(B) (IJ bond jurisdiction before a final order; categorical bar limited to "arriving aliens" and other enumerated classes) with 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (final interim rule explaining that "inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge"). The Board has repeatedly stated that it lacks the authority to invalidate or disregard Attorney General regulations. *See*, e.g., *Matter of Akram*, 25 I&N Dec. 874, 875 (BIA 2012). Basic administrative law likewise forbids an agency from accomplishing a de facto amendment of a binding legislative rule through adjudication rather than notice-and-comment rulemaking. *See*, e.g., *Marseilles Land & Water Co. v. FERC*, 345 F.3d 916, 920 (D.C. Cir. 2003).

Nor does *Yajure Hurtado* warrant deference in federal habeas proceedings. Under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 413 (2024), courts must exercise independent judgment and may not defer to an agency interpretation simply because a statute is ambiguous. Federal courts evaluating the same detention theory have thus declined to treat *Yajure Hurtado* as controlling or persuasive and have ordered bond hearings under INA § 236(a), 8 U.S.C. § 1226(a).

7. Petitioner's continued detention without any individualized custody determination violates the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act, the Suspension Clause of the United States Constitution, and binding agency regulations. DHS's reliance on a categorical jurisdictional bar has resulted in prolonged civil confinement without adequate procedural safeguards or meaningful judicial review.

8. Petitioner seeks *habeas* relief ordering his immediate release from ICE custody or, in the alternative, an order directing Respondents to provide him with a prompt, constitutionally adequate, and individualized custody determination before a neutral decisionmaker with authority to order release. For the foregoing reasons, the Court should grant the *writ* and restore Petitioner's liberty.

## **FACTUAL BACKGROUND**

9. Petitioner is a Honduran national who came to the United States in 2019.

He has no criminal convictions, no history of violence or dangerous behavior, and no pending criminal charges.

10. Petitioner entered the United States in 2019, seeking protection from persecution. He did not possess valid documents permitting entry and did not enter through the border.

11. Following his detention, Petitioner was issued a Notice to Appear and placed into removal proceedings under section 240 of the Immigration and Nationality Act ("INA"). He thereafter filed applications for Asylum, Withholding, and relief Under the Convention Against Torture. His removal proceedings remain pending before the Immigration Court.

12. Petitioner was taken into custody by Immigration and Customs Enforcement ("ICE") during an interior enforcement operation conducted in a public area. He has remained in continuous civil immigration detention since that date while his removal proceedings are ongoing.

13. The Immigration Judge has maintained lack of jurisdiction and has not considered any individualized custody factors, including whether Petitioner posed a danger to the community, presented a risk of flight, had strong community ties, or could be safely released under reasonable conditions of supervision.

14. Petitioner is currently detained at the Port Isabel Detention Center in Los Fresnos, Texas. This is located within the Southern District of Texas. He has remained continuously detained despite having no criminal convictions, no disciplinary infractions while in custody, and no individualized finding that his detention is necessary to serve a legitimate governmental purpose.

15. Petitioner has fully complied with all requirements of his removal proceedings and has cooperated with immigration authorities at all times. His pending application for Asylum, Withholding, and CAT and involves the gathering of multiple pieces of evidence and the ability to interview and gather witnesses.

16. Petitioner's ongoing detention under restrictive, penal-like conditions, despite his compliance with immigration authorities and lack of any criminal history, inflicts serious liberty harms and raises grave constitutional concerns.

17. Petitioner has now been held in civil immigration detention since without any meaningful mechanism to seek release or to obtain a neutral review of whether his continued confinement is justified. Absent judicial intervention, Petitioner faces continued detention throughout his removal proceedings, without an individualized assessment or procedural safeguards.

## JURISDICTION

18. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner challenges the legality of his ongoing civil immigration detention and seeks relief that is within the traditional scope of *habeas corpus*. Jurisdiction also lies under 28 U.S.C. § 1331, as this Petition raises federal questions arising under the Constitution, laws, and treaties of the United States. The Suspension Clause of the United States Constitution further guarantees Petitioner's right to seek *habeas corpus* review where no other adequate remedy exists.

19. The Court may grant relief under the *habeas corpus* statutes, 28 U.S.C. § 2241 *et seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651. Congress has preserved judicial review of challenges to immigration detention, including claims raising statutory and constitutional questions. *See*, e.g., *Nielsen v. Preap*, 139 S. Ct. 954, 961–62 (2019); *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (distinguishing reviewable legal and constitutional claims from unreviewable discretionary determinations under 8 U.S.C. § 1226(e)).

20. Federal district courts have jurisdiction to hear *habeas corpus* claims brought by noncitizens challenging the lawfulness of their immigration detention. *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (recognizing *habeas* jurisdiction over challenges to immigration detention); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001) (same). That jurisdiction extends to claims alleging that detention exceeds statutory authority, violates constitutional guarantees, or results from agency action that is arbitrary, capricious, or contrary to law.

21. Although certain provisions of the INA limit judicial review of discretionary custody determinations, *see* 8 U.S.C. § 1226(e), those provisions do not preclude *habeas* review of constitutional claims, questions of law, or challenges to the legal basis for detention itself. Petitioner does not ask this Court to review or second-guess any discretionary bond decision. Rather, he challenges Respondents' authority to continue detaining Petitioner without any individualized custody determination, the constitutionality of prolonged detention without meaningful review, the lawfulness of DHS's blanket detention policy under the Administrative Procedure Act, and the legality of his warrantless arrest and resulting detention under binding agency regulations. Such claims fall squarely within the scope of *habeas* review. The Supreme Court has long recognized that federal courts retain *habeas* jurisdiction to review the statutory and constitutional bases of immigration detention notwithstanding jurisdiction-stripping provisions, as such review lies at the core of the Great Writ. See *Demore v. Kim*, 538 U.S. at 516–17; *Zadvydas v. Davis*, 533 U.S. at 687–88.

22. No petition for a *writ of habeas corpus* has previously been filed in any court regarding Petitioner.

## **VENUE**

23. Venue is proper in the United States District Court for the Southern District of Texas, Brownsville Division, pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493–500 (1973), because Petitioner is physically confined within this District and his immediate custodian—the Warden of the Port Isabel Detention Center exercises day-to-day control over his detention within the territorial jurisdiction of this Court.

24. Venue is also proper pursuant to 28 U.S.C. § 1391(e) because Respondents are officers, employees, and agencies of the United States acting in their official capacities, and because

a substantial part of the events and omissions giving rise to Petitioner's claims—including his warrantless arrest, continued detention, denial of any individualized custody determination, and the implementation of DHS's detention policy—occurred within the Southern District of Texas.

## PARTIES[2]

---

[2] In *Rumsfeld v. Padilla*, the Supreme Court addressed the identity of the proper respondent to a § 2241 habeas petition filed by a U.S. citizen challenging his detention as an enemy combatant. 542 U.S. 426 (2004). The Court held that the only appropriate respondent for a traditional habeas corpus petition involving a "core challenge" to "present physical confinement" is the individual's "immediate custodian," meaning the person in charge of the facility where the individual is being held *Id*. at 435. In that case, the immediate custodian was the commanding officer in charge of the naval brig where the petitioner was physically held. *Id*. at 442. The Supreme Court also made it clear that it would not address who the proper respondent would be for a petition filed by a noncitizen "detained pending deportation." The Court noted a disagreement among different circuit courts regarding whether the Attorney General is a proper respondent to a habeas petition in such cases and stated, "Because the issue is not before us today, we again decline to resolve it" *Id*. at 435 n.8.

JUNIOR ALONSO ARCHAGA Petiton for Writ of Habeas Corpus

25. Petitioner is a citizen and national of Honduras. He has been in immigration detention since January 2026. Petitioner was taken into custody by Immigration and Customs Enforcement during an ICE enforcement operation conducted in a public area.

26. Respondent **Kristi Noem** is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, Respondent is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for Petitioner's detention and custody. Respondent is a legal custodian of Petitioner.

27. Respondent **Pamela Bondi** is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice ("DOJ"). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review, which administers the immigration courts and the BIA. Respondent is a legal custodian of Petitioner.

28. Respondent **Todd Lyons** is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. In this capacity, Respondent is a legal custodian of Petitioner and possesses authority over ICE detention policies, including the authority to release Petitioner from custody. He is sued in his official capacity.

29. Respondent **Miguel Vergera** is sued in his official capacity as the Field Office Director of ICE's Enforcement and Removal Operations for Harlingen Field Office. As such, Respondent is responsible for overseeing Petitioner's detention and custody within the Harlingen Area of Responsibility and exercises authority over Petitioner's continued confinement. He is a legal custodian of Petitioner.

30. Respondent **Warden** is employed by U.S. Immigration and Customs Enforcement as the Warden of the Port Isabel Detention Center, the facility where Petitioner is currently detained. Respondent Randy Tate has immediate physical custody of Petitioner and is sued in his or her official capacity.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

31. Petitioner has exhausted all available administrative remedies, and no further administrative relief is available or required.

    The Immigration Judge has continually denied requests solely on jurisdictional grounds, concluding that the court lacked authority to consider bond or conduct any custody review based on DHS's classification of Petitioner as subject to mandatory detention under INA § 235(b).

32. Because the Immigration Court expressly determined that it lacked jurisdiction to conduct any custody redetermination, Petitioner has no administrative mechanism through which to challenge the legality, duration, or necessity of his detention. The Board of Immigration Appeals likewise lacks jurisdiction to review custody determinations where no bond hearing may be held.

33. Further administrative exhaustion would be futile. On or about January 13, 2026, Chief Immigration Judge Teresa L. Riley issued nationwide guidance instructing all immigration judges that: "*Maldonado Bautista* is not a nationwide injunction and does not purport to vacate, stay or enjoin *Yajure Hurtado*." Immigration judges are instructed to treat the BIA's decision in *Matter of Yajure Hurtado* as binding precedent. EOIR guidance further states that a "declaratory judgment" is not binding and lacks authority to compel specific action.[3] Under these circumstances, no administrative body within EOIR has authority to provide the relief sought.

34. DHS's discretionary parole authority does not constitute an available or adequate administrative remedy that must be exhausted prior to habeas review. Parole decisions are committed to agency discretion, are not subject to neutral adjudication, and provide no mechanism for Petitioner to challenge the legality of his detention. Courts have consistently

held that discretionary parole is not an exhaustion prerequisite to habeas corpus relief.

35. Therefore, Petitioner has been categorically denied access to any administrative custody review, and no adequate alternative remedy exists; exhaustion is either satisfied or excused  as futile. A *writ of habeas corpus* is the sole avenue to vindicate Petitioner's constitutional, statutory, and regulatory rights and to restore his liberty.

## LEGAL FRAMEWORK

36. The Immigration and Nationality Act ("INA") establishes multiple detention authorities governing noncitizens in removal proceedings, depending on procedural posture and statutory classification. These detention provisions operate against the backdrop of constitutional limitations on civil confinement and long-recognized principles of individualized custody review.

37. First, INA § 236(a), 8 U.S.C. § 1226(a), authorizes the discretionary detention of noncitizens placed in full removal proceedings under INA § 240, 8 U.S.C. § 1229a. Historically, individuals in section 1226(a) detention are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

38. Second, INA § 235(b), 8 U.S.C. § 1225(b), governs the detention of noncitizens classified as "applicants for admission," including individuals subject to expedited removal under § 1225(b)(1) and those referred to full removal proceedings under § 1225(b)(2). Section 1225(b)(2)(A) provides that certain applicants for admission "shall be detained" pending removal proceedings, subject to limited parole authority.

39. Finally, the Act also provides for the detention of noncitizens who have previously been ordered removed, including those in withholding-only proceedings. *See* 8 U.S.C. § 1231(a)–(b).

40. The detention provisions at section 1226(a) and 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009-582 to 3009-583, 3009-585. Section 1226(c) was most recently amended earlier this year by the LRA, Pub. L. No. 119-1, 139 Stat. 3 (2025). Congress enacted these provisions against a longstanding background principle that civil immigration detention must remain tied to legitimate regulatory purposes and must comport with constitutional due-process requirements.

41. Following IIRIRA's enactment, the Executive Office for Immigration Review promulgated regulations explaining that, as a general matter, noncitizens who entered without inspection and were placed in § 240 removal proceedings were detained under § 1226(a), not § 1225(b). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In the decades that followed, most noncitizens who entered without inspection—unless they were subject to some other detention authority—received bond hearings. This practice was also consistent with pre-IIRIRA procedure, in which noncitizens not deemed "arriving" were entitled to a custody hearing before an Immigration Judge or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see* also *H.R. Rep*. No. 104-469, pt. 1, at 229 (1996) (noting that section 1226(a) simply "restates" the detention authority previously found at section 1252(a)).

42. On July 8, 2025, DHS issued a memo to all employees of Immigration and Customs Enforcement ("ICE") stating that "[t]his message serves as notice that DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that section 235 of the Immigration and Nationality Act (INA) [8 U.S.C. § 1225], rather than section 236 [8 U.S.C. § 1226], is

the applicable immigration detention authority for all applicants for admission. The following interim guidance is intended to ensure immediate and consistent application of the Department's legal interpretation while additional operational guidance is developed." The memo further stated DHS' new position with regard to custody determinations as follows:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole. These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c).**
>
> Moving forward, ICE will not issue Form I-286, Notice of Custody Determination, to applicants for admission because Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of Title 8 of the Code of Federal Regulations. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will affirmatively cancel the Form I-286. *See* https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authorityfor-applications-for-admission (last accessed August 4, 2025) (emphasis original).

43. As a result, DHS now considers all noncitizens who have entered the United States without inspection and are subject to the grounds of inadmissibility, including longtime U.S. residents, are now considered to be subject to mandatory detention under section § 1225(b) and ineligible for release on bond. Conversely, according to DHS "[t]he only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those

subject to mandatory detention under INA § 236(c) [8 U.S.C. § 1226(c)]." *Id.*

44. On September 5, 2025, the BIA issued a precedential decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), holding that, based on the plain language of 8 U.S.C. § 1225(b)(2)(A), Immigration Judges lack authority to hear bond requests or to grant bond to noncitizens who are present in the United States without admission.

45. On February 6, 2026, the United States Court of Appeals for the Fifth Circuit endorsed that statutory interpretation in *Buenrostro-Mendez v. Bondi*, Nos. 25-20496 & 25-40701 (5th Cir. Feb. 6, 2026), foreclosing purely statutory claims to bond hearings under § 1226(a) within this Circuit.

46. However, neither *Yajure Hurtado* nor *Buenrostro-Mendez* addressed—much less resolved—the independent constitutional, administrative-law, equal-protection, Suspension Clause, or *Accardi*-based limitations on prolonged civil detention without individualized review. As the Supreme Court made clear in *Jennings v. Rodriguez*, 583 U.S. 281, 302–03 (2018), the absence of a statutory bond entitlement does not eliminate constitutional constraints on detention or foreclose habeas review.

47. Accordingly, even where § 1225(b)(2)(A) is assumed to govern detention, continued civil confinement remains subject to the Due Process Clause, the Administrative Procedure Act, the Suspension Clause, and binding agency regulations. Detention that becomes prolonged, indefinite, arbitrary, or wholly insulated from meaningful review exceeds the lawful authority conferred by Congress and violates fundamental constitutional guarantees.

**THE FIFTH CIRCUIT'S FEBRUARY 6, 2026 DECISION IN *BUENROSTRO-MENDEZ v. BONDI* FORECLOSES PETITIONER'S PURELY STATUTORY CLAIM TO A BOND HEARING UNDER 8 U.S.C. § 1226(a) BUT DOES NOT PRECLUDE HABEAS RELIEF ON CONSTITUTIONAL AND OTHER GROUNDS**

A. ***Buenrostro-Mendez* forecloses Petitioner's purely statutory entitlement theory under § 1226(a), but it does not deprive this Court of habeas jurisdiction or resolve Petitioner's independent constitutional and other claims.**

48. On February 6, 2026, a panel of the United States Court of Appeals for the Fifth Circuit issued its published opinion in *Buenrostro-Mendez v. Bondi*, Nos. 25-20496 & 25-40701 (5th Cir. Feb. 6, 2026). The panel held that noncitizens who are present in the United States without having been admitted or paroled—including those apprehended years after entry—are "applicants for admission" under 8 U.S.C. § 1225(a)(1) and are subject to mandatory detention under § 1225(b)(2)(A) pending removal proceedings under § 1229a. The panel further held that such individuals are not eligible for discretionary release on bond under § 1226(a) and that immigration judges lack jurisdiction to conduct bond hearings in their cases. The panel endorsed the Board of Immigration Appeals' precedential decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and reversed two district court orders that had granted habeas relief on statutory grounds.

49. This Court is bound by the Fifth Circuit's holding on the purely statutory question of whether § 1225(b)(2)(A) or § 1226(a) governs Petitioner's detention and whether he has a statutory entitlement to a bond hearing before an immigration judge. Petitioner respectfully acknowledges that, under *Buenrostro-Mendez*, Petitioner has no statutory right to such a hearing.

50. However, the Fifth Circuit's decision does not resolve—and expressly did not reach—the independent constitutional and other claims raised in this Petition. The panel in *Buenrostro-Mendez* addressed only the statutory interpretation dispute and reversed the district courts

solely because they had granted bond hearings as a matter of statutory entitlement under § 1226(a). The panel had no occasion to consider due process challenges to prolonged or indefinite mandatory detention without any individualized hearing, nor did it address claims under the Administrative Procedure Act, the equal protection component of the Fifth Amendment, the Suspension Clause, or the *Accardi* doctrine.

51. The Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), similarly held that there is no statutory right to periodic bond hearings under §§ 1225(b), 1226(a), or 1226(c), but it explicitly remanded for the lower courts to consider constitutional arguments in the first instance. *Id.* at 302–03. The Fifth Circuit's statutory holding in *Buenrostro-Mendez* leaves those constitutional questions open, just as *Jennings* did.

**B. Habeas jurisdiction remains available to test the legality of detention and the constitutionality of detention procedures; § 1226(e) does not bar review of legal and constitutional claims.**

52. Nothing in *Buenrostro-Mendez* strips this Court of jurisdiction under 28 U.S.C. § 2241 to adjudicate constitutional challenges to immigration detention or to review whether the Executive's custody scheme violates governing law. *Jennings* itself distinguishes unreviewable discretionary custody judgments from reviewable questions of law and constitutional claims. Likewise, *Zadvydas v. Davis*, 533 U.S. 678 (2001), and *Demore v. Kim*, 538 U.S. 510 (2003), both proceeded through § 2241 habeas and underscore that civil immigration detention must remain tethered to lawful purposes and must satisfy due process.

53. Petitioner does not ask this Court to second-guess a discretionary bond determination. He challenges DHS's asserted authority to hold him in prolonged civil detention without any meaningful individualized custody determination by a neutral decisionmaker empowered

to order release, and he challenges the lawfulness of the government's detention process as applied to him.

## AS-APPLIED DUE PROCESS VIOLATION FROM PROLONGED OR INDEFINITE DETENTION WITHOUT INDIVIDUALIZED HEARING

54. Even accepting the Fifth Circuit's interpretation that § 1225(b)(2)(A) mandates detention and provides no statutory bond hearing, Petitioner's ongoing and potentially indefinite detention without any individualized custody determination violates the Due Process Clause of the Fifth Amendment as applied to him.

55. Civil immigration detention is permissible only to the extent it serves the statutory purposes of ensuring appearance at proceedings and protecting the community from danger. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Demore v. Kim*, 538 U.S. 510, 527–28 (2003). When detention becomes prolonged or indefinite and is no longer tied to those purposes, it becomes punitive and unconstitutional. *Id*.

56. Although Petitioner's detention is currently approximately two months old, since January 2026, his pending applications for asylum, withholding of removal, and Convention Against Torture protection are complex and typically require extended proceedings—often lasting one to three years or more, nationals given country-conditions evidence and backlog. Absent any mechanism for individualized review, Petitioner faces a substantial risk of indefinite detention under penal conditions despite having no criminal history, no disciplinary infractions, demonstrated compliance, and no individualized finding of danger or flight risk.

57. Numerous district courts, including within the Fifth Circuit, have held post-*Jennings* that due process requires an individualized bond hearing, with the government bearing the burden of proof by clear and convincing evidence, when mandatory detention under §§ 1225(b) or 1226(c) becomes prolonged. While the Fifth Circuit has not adopted a bright-line rule, district courts in this Circuit and others commonly find six months presumptively unreasonable absent individualized justification. *See*, e.g., practice advisories and district

court orders cited in post-*Jennings* litigation, collecting cases requiring hearings after 6–12 months under analogous mandatory detention provisions.

58. The constitutional concerns are heightened here because the government's new interpretation—upheld in *Buenrostro-Mendez*—extends mandatory detention without bond or hearing to noncitizens who have lived openly in the United States for significant periods, here, over two years , accrued equities, and were not detained at the time of initial processing. Traditional "arriving alien" detention under § 1225(b)

historically applied to those apprehended at or near the border or port of entry, where detention was typically brief pending expedited processing. Extending it to individuals in full § 1229a proceedings with meritorious relief claims raises far graver liberty interests than the brief detention upheld in Demore or contemplated for true arriving aliens.

59. Petitioner has no criminal record, no history of violence, and strong humanitarian claims. Continued categorical detention without any hearing—where the government never has to justify his confinement by evidence—serves no legitimate purpose and is punitive in effect.

**PRESERVATION OF STATUTORY ARGUMENT FOR *EN BANC* OR SUPREME COURT REVIEW**

60. To preserve the issue for possible *en banc* review or *certiorari*, Petitioner respectfully submits that the panel in Buenrostro-Mendez erred in its statutory interpretation for the following reasons, which align with the overwhelming majority of district court decisions nationwide prior to February 6, 2026:

a) The phrase "an alien seeking admission" in § 1225(b)(2)(A) is in the present tense and applies only to those actively seeking admission at the time of apprehension (e.g., at a port of entry or in active inspection), not to individuals living quietly in the interior

years later.

b) The government's and panel's reading renders § 1226(a)'s bond provisions largely superfluous for the vast majority of noncitizens in removal proceedings who entered without inspection.

c) It contradicts three decades of consistent administrative practice (1997–2025), including EOIR regulations and DHS guidance treating such individuals as detained under § 1226(a).

d) It reverses the congressional intent behind IIRIRA, which sought to eliminate incentives for evading inspection but did not contemplate mandatory indefinite detention for long-present residents.

e) Over 350 district courts nationwide rejected the government's position in 2025–early 2026 habeas cases, finding the text, structure, and history compel application of § 1226(a).

61. These preserved arguments do not request this Court to disregard binding Fifth Circuit precedent on the statutory issue; they are included solely to preserve further review.

62. The APA claim remains viable because DHS's abrupt 2025 policy reversal—announced via internal memo without notice-and-comment or reasoned explanation for departing from 28 years of practice—is arbitrary and capricious under 5 U.S.C. § 706(2)(A). *Buenrostro-Mendez* did not address this administrative law challenge.

63. Because *Buenrostro-Mendez* resolved only the statutory interpretation question, it does not preclude (a) equal protection challenges to arbitrary detention classifications and disparate treatment without a rational basis, (b) Suspension Clause claims where the government's scheme eliminates any meaningful mechanism—other than habeas—to test the legality of detention, and (c) Accardi claims requiring the agency to follow its own binding arrest and processing regulations. *See* 8 C.F.R. § 287.8(c)(2)(i)–(ii).

64. For all these reasons, this Court may—and should—grant *habeas* relief on non-statutory

grounds by ordering Respondents to order his immediate release under reasonable conditions of supervision or, in the alternative, provide Petitioner a prompt, individualized bond hearing before a neutral decisionmaker with the government bearing the burden to justify continued detention by clear and convincing evidence.

## THE FIFTH CIRCUIT PANEL'S DECISION IN *BUENROSTRO-MENDEZ v. BONDI* IS INCONSISTENT WITH *LOPER BRIGHT ENTERPRISES v. RAIMONDO*

65. To further preserve the statutory issue for potential *en banc* review by the Fifth Circuit or *certiorari* to the Supreme Court, Petitioner respectfully submits that the panel's decision in *Buenrostro-Mendez v. Bondi*, Nos. 25-20496 & 25-40701 (5th Cir. Feb. 6, 2026), is inconsistent with the Supreme Court's controlling precedent in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), which overruled *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

66. In *Loper Bright*, the Supreme Court held that courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority" and may no longer defer to an agency's interpretation of an ambiguous statute under *Chevron*. *Id.* at 374. While agencies' views may still be entitled to respectful consideration under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)—with persuasive force depending on factors such as the thoroughness of the agency's reasoning, the consistency of its position over time, and its expertise—courts must independently determine the best reading of the statute using traditional tools of statutory construction. *Loper Bright*, 603 U.S. at 402.

67. The panel in *Buenrostro-Mendez* did not adhere to this mandate. Although the panel conducted a textual analysis, its reasoning effectively accorded dispositive weight to the Board of Immigration Appeals' recent interpretation in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)—a 2025 decision that abruptly reversed nearly three decades of

consistent administrative practice (1997–2025) treating unadmitted noncitizens apprehended in the interior as subject to discretionary detention and bond eligibility under § 1226(a). The panel adopted the BIA's new position wholesale, without acknowledging

or applying the *Skidmore* factors that, post-*Loper Bright*, should have diminished the persuasive value of an inconsistent, late-breaking agency reversal.

68. Under *Skidmore* and *Loper Bright*, longstanding agency interpretations are entitled to greater weight precisely because consistency and reliance interests bolster their persuasiveness. Here, the opposite occurred: for 28 years, multiple administrations, EOIR regulations, and DHS guidance uniformly applied § 1226(a) to individuals in Petitioner's position. *See*, e.g., Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). The BIA's 2025 reversal—prompted by a policy shift announced in a July 2025 DHS memo—lacks the hallmarks of thorough, consistent reasoning that could earn persuasive force. Yet the panel endorsed it without critically examining this inconsistency or independently weighing the superior reading supported by historical practice, statutory structure, and the overwhelming majority of pre-2026 district court decisions (over 350 nationwide).

69. This approach mirrors the deference prohibited by *Loper Bright*, as the panel appeared to treat the agency's new litigating position and BIA precedent as authoritative rather than exercising fully independent judgment. The panel dismissed the decades of contrary practice as irrelevant ("The text says what it says, regardless of the decisions of prior administrations"), effectively insulating the agency's reversal from meaningful judicial scrutiny—the very dynamic *Loper Bright* rejected. As the dissent in *Buenrostro-Mendez* recognized, the majority's reading amounts to "rubber stamp[ing]" the government's "proposed legislation by executive fiat," a concern heightened in the post-*Chevron* era

where courts must not abdicate their interpretive role.

70. The panel's failure to grapple with *Loper Bright*'s implications is particularly striking given that the BIA itself invoked *Loper Bright* in *Yajure Hurtado* to assert that the statute is "clear and unambiguous," thereby attempting to preempt deference questions. But where reasonable minds differ—as evidenced by the hundreds of district courts rejecting the government's position, the dissent's detailed critique, and the statutory tensions (*e.g.*, surplusage in § 1226(a), present-tense "seeking admission")—*Loper Bright* requires courts to resolve ambiguity independently, not to defer to an agency's self-serving declaration of clarity after decades of interpreting the statute differently.

71. For these reasons, the panel's statutory holding warrants reconsideration *en banc*, as it conflicts with *Loper Bright*'s command that courts, not agencies, hold the ultimate responsibility for statutory meaning. This Court, while bound by the panel's result on the pure statutory claim in this Circuit, may note this tension in support of granting relief on the independent constitutional and APA grounds asserted herein.

## COUNT I: UNLAWFUL DETENTION IN VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT ("INA") AND IMPLEMENTING REGULATIONS

72. Petitioner re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

73. The Immigration and Nationality Act authorizes immigration detention only to the extent it serves legitimate, non-punitive statutory purposes—namely, to ensure an individual's appearance at future proceedings or to protect public safety. Detention that does not advance those purposes, or that becomes arbitrary and indefinite, exceeds the government's statutory authority. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Clark v. Martinez*, 543 U.S. 371, 381 (2005).

74. Petitioner entered the United States on or about 2019 and was placed into removal proceedings under INA § 240, and has pending applications for asylum, withholding of removal, and protection under the Convention Against Torture. His removal proceedings remain ongoing.

75. Petitioner has no criminal convictions and no record of violence, and has never exhibited conduct suggesting danger to the community or risk of flight. Nothing in his immigration file indicates that he poses a threat to public safety or that he would fail to appear for his hearings if released.

76. Petitioner has been continuously detained in civil immigration custody since December 2025, following an ICE enforcement operation, and is currently confined at the Port Isabel Detention Facility in Los Fresnos, Texas.

77. The Immigration Court's continuously denies custody redetermination solely on jurisdictional grounds, relying on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). The Immigration Judge concluded that they lacked authority to conduct any individualized custody assessment and therefore declined to consider Petitioner's eligibility for release.

78. The Immigration Judge has not considered any individualized custody factors and did not evaluate Petitioner's lack of criminal history, his non-dangerousness, his cooperation with immigration authorities, or the feasibility of alternatives to detention.

79. Because the Immigration Judge determined that he lacked jurisdiction, Petitioner now has no administrative mechanism for custody review, effectively subjecting him to prolonged and potentially indefinite detention without statutory authority or procedural safeguards.

80. Petitioner acknowledges that, under the Fifth Circuit's decision in *Buenrostro-Mendez v. Bondi*, Nos. 25-20496 & 25-40701 (5th Cir. Feb. 6, 2026), he does not possess a purely

statutory entitlement to a bond hearing before an immigration judge under 8 U.S.C. § 1226(a).

81. However, neither *Buenrostro-Mendez* nor *Matter of Yajure Hurtado* authorizes unlimited, unreviewable civil detention untethered from the INA's non-punitive purposes. The INA does not permit detention to operate as punishment, deterrence, or coercion, nor does it authorize prolonged confinement absent a meaningful mechanism to assess whether continued detention is necessary to serve its legitimate aims. *Zadvydas*, 533 U.S. at 690–91; Clark, 543 U.S. at 380–81.

82. Even where detention is initially authorized under INA § 235(b)(2)(A), the statute must be applied consistent with its limited purpose and in conjunction with the INA's broader detention framework, including DHS's continuing discretionary authority to release noncitizens through parole, supervision, or other conditions where detention no longer serves a legitimate statutory objective. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5.

83. DHS has not conducted any individualized assessment of whether Petitioner's continued detention is necessary to ensure appearance or protect public safety, nor has it articulated any reasoned basis for rejecting less restrictive alternatives to detention. The categorical reliance on *Yajure Hurtado* as a blanket bar to custody review effectively transforms a civil detention scheme into one of indefinite confinement without statutory justification.

84. Petitioner's continued detention bears no reasonable relationship to the purposes of the INA. It is not tied to imminent removal, is not supported by any individualized finding of danger or flight risk, and persists solely as a result of a categorical legal interpretation that eliminates all meaningful custody review.

85. Detention under these circumstances exceeds the detention authority Congress conferred in the INA and contravenes the statute's non-punitive design, its implementing regulations,

and controlling Supreme Court precedent limiting civil immigration detention to what is reasonably necessary to achieve its lawful purposes.

86. Accordingly, Petitioner's continued detention is unlawful under the Immigration and Nationality Act and its implementing regulations. Petitioner respectfully requests that this Court grant habeas relief by ordering his immediate release, or, in the alternative, ordering Respondents to provide a prompt, lawful, and meaningful individualized custody determination consistent with the INA and governing law.

## COUNT II: VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

87. Petitioner re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

88. The Fifth Amendment guarantees that no person shall be deprived of liberty without due process of law. Noncitizens physically present in the United States—including those who entered without inspection—are "persons" within the meaning of the Fifth Amendment and entitled to full procedural due process protections. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Landon v. Plasencia,* 459 U.S. 21, 32 (1982)

89. Petitioner is a Honduran National who entered the United States not through the bridge in 2019 and was placed into full removal proceedings under INA § 240. His removal proceedings remain pending, and he will file applications for asylum, withholding of removal, and protection under the Convention Against Torture.

90. Petitioner has no criminal convictions and no record of violence, and no pending criminal charges, and has never exhibited conduct suggesting danger to the community or risk of flight, and has consistently cooperated with immigration authorities since his apprehension.

91. Petitioner has been continuously detained in civil immigration custody since December 2025 when he was taken into ICE custody during an enforcement operation and confined at the Port Isabel Detention Facility in Los Fresnos, Texas. Through counsel, he requested an individualized custody determination and proffered evidence establishing that he poses no danger to the community, has community ties and a stable place to reside, and is fully willing to comply with all immigration court requirements.

92. The Immigration Judge will assuredly deny bond solely on jurisdictional grounds, relying on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). The Immigration Judge will conclude that he lacks authority to conduct any individualized custody assessment and therefore decline to consider Petitioner's eligibility for release.

93. As a result, Petitioner has been categorically barred from receiving any hearing before a neutral adjudicator to determine whether his detention is justified. He has been denied the opportunity to present evidence, contest the government's assertions, or obtain a meaningful review of his custody.

94. Immigration detention implicates a fundamental liberty interest. While Congress may authorize civil detention in the immigration context, such detention must remain reasonably related to its non-punitive purposes—ensuring appearance at proceedings and protecting public safety—and must comport with basic procedural due process. *Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. 510, 527–28 (2003).

95. Even accepting the Fifth Circuit's statutory interpretation in *Buenrostro-Mendez v. Bondi*, Nos. 25-20496 & 25-40701 (5th Cir. Feb. 6, 2026), which forecloses a purely statutory entitlement to a bond hearing under 8 U.S.C. § 1226(a), that decision does not authorize prolonged or potentially indefinite civil detention without any individualized custody hearing and does not resolve the constitutional question presented here.

96. The Supreme Court has made clear that the absence of a statutory right to a bond hearing does not foreclose as-applied constitutional challenges to immigration detention. In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Court rejected a statutory bond-hearing requirement but expressly remanded for consideration of constitutional due process claims. *Id.* at 302–03.

97. The constitutional infirmity here is not merely the length of detention but the complete absence of any meaningful custody process. Petitioner is detained pursuant to a regime in which:

   A.  No immigration judge may conduct a bond hearing;

   B.  DHS is not required to justify continued detention with evidence; and

   C.  No neutral decisionmaker is empowered to order release, regardless of the Petitioner's lack of danger or flight risk.

98. This categorical denial of any individualized custody determination violates procedural due process. Fundamental fairness requires, at a minimum, a meaningful opportunity to be heard before a neutral adjudicator when the government restrains physical liberty for a prolonged period. Zadvydas, 533 U.S. at 690; *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

99. The government's detention of Petitioner without any individualized assessment also violates substantive due process. Detaining a young asylum seeker with no criminal history, no dangerousness, and no flight risk—without requiring the government to justify detention or consider less restrictive alternatives—renders the confinement excessive and punitive in effect.

100.    Because the Immigration Judge has disclaimed jurisdiction and DHS has provided no alternative constitutionally adequate custody process, habeas corpus is the only effective mechanism by which Petitioner may test the legality of his confinement. Continued detention under these circumstances offends the core protections of the Due

Process Clause.

101.    Accordingly, Petitioner's continued detention without an individualized custody determination violates the Fifth Amendment as applied to him. *Habeas* relief is warranted. Petitioner respectfully requests that this Court order his immediate release from ICE custody; or in the alternative, order Respondents to provide a prompt, constitutionally adequate individualized custody hearing before a neutral decisionmaker with authority to grant release, at which the government bears the burden of justifying continued detention.

## COUNT III: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT – ARBITRARY AND CAPRICIOUS AGENCY ACTION

102.    Petitioner re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

103.    The Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), requires courts to "hold unlawful and set aside" agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. An agency acts arbitrarily and capriciously when it fails to examine relevant factors, ignores important aspects of the problem, departs from settled practice without reasoned explanation, or treats discretion as categorically unavailable where Congress has not so provided. *Judulang v. Holder*, 565 U.S. 42, 53–55 (2011).

104.    Petitioner does not challenge the Fifth Circuit's statutory holding in *Buenrostro-Mendez v. Bondi*, Nos. 25-20496 & 25-40701 (5th Cir. Feb. 6, 2026), regarding immigration-judge bond jurisdiction. Rather, Petitioner challenges DHS's independent-agency action in implementing and applying a blanket detention policy that treats *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), as eliminating all meaningful individualized custody discretion and review.

105.    The Department of Homeland Security has acted arbitrarily and capriciously by continuing to detain Petitioner without any individualized custody assessment or reasoned explanation. Petitioner has no criminal convictions, has no pending criminal charges, has not engaged in violence or dangerous behavior, and has consistently cooperated with immigration authorities since his transfer into ICE custody.

106.    Despite these facts, DHS has maintained Petitioner's detention for an extended and potentially indefinite period without providing any reasoned explanation or evidence that continued confinement serves a legitimate statutory purpose. DHS has failed to articulate why release under supervision, bond, or other alternatives would be insufficient.

107.    DHS's reliance on *Matter of Yajure Hurtado* to justify continued detention is arbitrary and contrary to law. *Yajure Hurtado* addresses the jurisdiction of Immigration Judges to conduct bond hearings. It does not compel DHS to detain noncitizens indefinitely, nor does it eliminate DHS's longstanding discretionary authority to release

noncitizens on parole, recognizance, supervision, or bond.

108.    By treating *Yajure Hurtado* as an absolute bar to any form of individualized custody consideration, DHS has unlawfully transformed a discretionary detention framework into a blanket detention rule, substituting categorical inaction for the case-by-case decision-making required by the INA and the APA

109.    DHS has failed to consider relevant factors in Petitioner's case, including but not limited to:

   a)  Petitioner's lack of criminal history and non-dangerousness;

   b)  His demonstrated compliance with immigration authorities;

   c)  His pending humanitarian protection claims;

   d)  The absence of any individualized flight-risk finding; and

   e)  The availability of less restrictive alternatives to detention.

110.     DHS has also failed to provide a reasoned explanation for its abrupt departure from decades of settled administrative practice (1997–2025), during which noncitizens in Petitioner's posture routinely received individualized custody determinations and were considered for release under supervision or bond. Such an unexplained reversal of course is arbitrary and capricious under the APA. *Judulang*, 565 U.S. at 55.

111.     Civil immigration detention is statutorily limited to non-punitive purposes—ensuring appearance at proceedings and protecting public safety. DHS's continued detention of Petitioner, without individualized justification and without consideration of alternatives, does not advance either purpose and therefore exceeds lawful agency discretion.

112.     DHS's actions are arbitrary, capricious, an abuse of discretion, and not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A). The agency has effectively nullified its own discretionary authority through categorical non-exercise, which the APA prohibits.

113.     Habeas relief is warranted to remedy this unlawful agency conduct. Petitioner respectfully requests that this Court order his immediate release or, in the alternative, direct DHS to conduct a prompt, individualized, and reasoned custody determination consistent with the Administrative Procedure Act, the Immigration and Nationality Act, and governing constitutional principles.

## COUNT IV: VIOLATION OF THE EQUAL PROTECTION GUARANTEE OF THE FIFTH AMENDMENT

114.     Petitioner re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

115.     The Due Process Clause of the Fifth Amendment contains an implicit guarantee of equal protection that prohibits the federal government from treating similarly situated individuals differently without a rational and legitimate governmental purpose. *Reno v. Flores*, 507 U.S. 292, 302 (1993); *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *Bolling v. Sharpe,* 347 U.S. 497, 499 (1954).

116.     Petitioner is in removal proceedings under section 240 of the Immigration and Nationality Act—the same adjudicatory framework that governs millions of noncitizens nationwide, whose cases proceed before immigration judges and whose liberty interests are assessed through individualized custody determinations.

117.     Petitioner is similarly situated, for custody purposes, to other noncitizens in § 240 proceedings who have no criminal convictions and no record of violence or dangerous behavior. He has cooperated fully with immigration authorities since entering ICE custody. Yet Petitioner alone is categorically denied access to any individualized custody review.

118.     Petitioner's disparate treatment rests solely on DHS's *post-hoc* classification of him as an "applicant for admission" under INA § 235(b), based on disputed and unreviewed allegations regarding the manner and timing of his entry—facts never adjudicated in a custody hearing and never tested before a neutral decisionmaker.

119.     This categorical denial creates an unjustifiable disparity between Petitioner and other similarly situated § 240 respondents who receive individualized custody determinations—even where those individuals entered without inspection, were apprehended long after entry, and present identical risk profiles.

120.     Equal protection requires that detention classifications bear a rational relationship to a legitimate governmental purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Civil immigration detention is permissible only insofar as it serves the non-punitive purposes of ensuring appearance at proceedings or protecting public safety. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

121.    DHS's classification scheme fails rational-basis review as applied to Petitioner. The government has never alleged—let alone established—that Petitioner poses a danger or flight risk, nor has it explained how denying him any custody review advances detention's legitimate purposes.

122.    Instead, DHS relies on a categorical rule that treats similarly situated individuals differently based solely on entry-related labels that bear no rational relationship to present-day custody concerns. Such arbitrary line-drawing is constitutionally impermissible even under deferential review. *See Zadvydas*, 533 U.S. at 690; *Plyler*, 457 U.S. at 216.

123.    Moreover, federal courts have recognized that immigration detention classifications must comport with fundamental fairness and may not be applied arbitrarily or discriminatorily. *See*, e.g., *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011) (government must justify detention with individualized evidence); *Rodriguez v. Robbins*, 804 F.3d 1060, 1074–76 (9th Cir. 2015) (due process prohibits prolonged detention without meaningful review).

124.    The irrationality of this classification is heightened by the government's own prior practice. For nearly three decades, DHS and EOIR treated noncitizens in Petitioner's posture as eligible for individualized custody determinations. DHS's abrupt departure from that settled practice—without individualized justification—underscores the arbitrariness of the disparate treatment imposed here.

125.    By denying Petitioner any opportunity to obtain an individualized custody determination while granting such a process to similarly situated noncitizens, DHS has violated the equal protection component of the Fifth Amendment.

126.    *Habeas* relief is therefore warranted to remedy this unconstitutional disparate treatment. Petitioner respectfully requests that this Court order his immediate release or, in

the alternative, direct Respondents to provide him with a prompt and meaningful individualized custody determination under constitutionally adequate standards.

## COUNT V: VIOLATION OF THE SUSPENSION CLAUSE OF THE UNITED STATES CONSTITUTION

127.    Petitioner re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

128.    The Suspension Clause of the United States Constitution provides that "[t]he Privilege of the *Writ of Habeas Corpus* shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. The Clause guarantees the availability of judicial review to challenge the lawfulness of executive detention. *Boumediene v. Bush*, 553 U.S. 723, 745–46 (2008); *INS v. St. Cyr*, 533 U.S. 289, 300–05 (2001).

129.    *Habeas corpus* remains available to all persons in the United States who are detained by executive authority, including noncitizens in civil immigration custody. The Supreme Court has repeatedly held that Congress—and a fortiori the Executive—may not eliminate all avenues of meaningful judicial review of the legality of detention. *St. Cyr*, 533 U.S. at 305–06; *Boumediene*, 553 U.S. at 779.

130.    Petitioner is detained solely under civil immigration authority and is currently confined at the Port Isabel Detention Center in Los Fresnos, Texas. He has no criminal convictions, no pending criminal charges, no history of violence, and his removal proceedings remain pending before an immigration judge.

131.    The Immigration Judge h a s  categorically denied jurisdiction to consider bond  or conduct any individualized custody determination, relying exclusively on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). This classification—based on disputed and unreviewed allegations regarding the manner and timing of Petitioner's entry— foreclosed access to the custody redetermination process available to other § 240

respondents.

132.    Because the Immigration Judge has previously concluded that he lacks jurisdiction, Petitioner has no administrative pathway to challenge the legality, duration, or necessity of his detention. The Board of Immigration Appeals likewise lacks jurisdiction to review custody determinations in which no bond hearing can be held. ICE has also declined to provide any individualized parole or custody assessment.

133.    As a result, no adequate or effective substitute for habeas corpus exists through which Petitioner may obtain judicial review of the legality of his confinement. Neither the Immigration Courts nor the Board of Immigration Appeals possesses jurisdiction to review custody challenges arising from DHS's classification decisions.

134.    The Suspension Clause forbids the government from implementing a detention scheme that eliminates all meaningful opportunity for detainees to test the legality of their confinement. *Boumediene*, 553 U.S. at 779 ("The writ must be effective."). When no adequate and effective substitute exists, *habeas* review is constitutionally required. *St. Cyr*, 533 U.S. at 305.

135.    Petitioner's detention—prolonged, non-punitive in name but punitive in effect, and wholly insulated from individualized review—implicates the core protections of the Suspension Clause. Without *habeas corpus*, Petitioner has no judicial or administrative forum in which to contest the legality of his ongoing confinement.

136.    The government's application of *Matter of Yajure Hurtado* to categorically bar all custody review, combined with DHS's refusal to conduct any individualized discretionary assessment, results in a detention regime that violates the Suspension Clause by eliminating any effective means to challenge unlawful detention.

137.    Accordingly, *habeas corpus* relief is constitutionally required. Petitioner

respectfully requests that this Court grant the writ and order Petitioner's immediate release from ICE custody or, in the alternative, direct Respondents to provide a prompt, meaningful, and individualized custody determination before a neutral decisionmaker with authority to order release.

## COUNT VI: VIOLATION OF THE *ACCARDI* DOCTRINE WITH RESPECT TO 8 C.F.R. § 287.8(C)(2)(I) AND (II)

138.    Petitioner repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

139.    Under the *Accardi* doctrine, federal agencies are required to follow their own binding regulations, and failure to do so renders resulting agency action unlawful. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). This principle applies with full force in immigration proceedings and is enforceable through habeas corpus where regulatory violations result in unlawful detention.

140.    The United States has also failed to follow immigration-specific arrest and processing regulations. Regulations governing immigration enforcement require that warrantless arrests comply with the standards set forth in 8 C.F.R. § 287.8(c). Specifically, for any arrest, immigration officers must have reason to believe that an individual committed an offense against the United States or was present in the United States illegally. 8 C.F.R. § 287.8(c)(2)(i). And, for a warrantless arrest, officers must also have reason to believe that an individual is "likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii).

141.    These regulatory requirements are mandatory, not discretionary. They impose substantive limitations on ICE's authority to conduct warrantless arrests in the interior of the United States and are designed to protect against arbitrary deprivations of liberty.

142.    At the time he was taken into ICE custody in January 2026, and at all times

thereafter, Petitioner had complied with all immigration requirements, including appearing for his immigration proceedings and remaining available to immigration authorities. Petitioner was taken into ICE custody during an ICE enforcement operation conducted in a public area, without a judicial warrant.

143.    Petitioner was not evading law enforcement, was not subject to any criminal investigation, posed no danger to any person or to the community, and presented no risk of flight. There was no factual basis to conclude that Petitioner was "likely to escape before a warrant could be obtained," as required by 8 C.F.R. § 287.8(c)(2)(ii).

144.    ICE officers, therefore, failed to comply with a mandatory regulatory prerequisite to a lawful warrantless arrest. This violation of DHS's own binding regulations renders Petitioner's arrest unlawful under the Accardi doctrine.

145.    The consequences of this regulatory violation are not limited to the moment of arrest. Petitioner's ongoing detention flows directly from—and is predicated upon—the unlawful warrantless arrest conducted in violation of 8 C.F.R. § 287.8(c). Continued detention based on an arrest that contravenes binding regulations is itself unlawful.

146.    Federal courts have repeatedly recognized that habeas corpus is an appropriate vehicle to remedy detention that results from an agency's failure to follow its own regulations, particularly where those regulations are designed to protect individual liberty. *See Accardi*, 347 U.S. at 267–68; *St. Cyr*, 533 U.S. at 301–05.

147.    By arresting Petitioner without a warrant and without satisfying the regulatory requirements governing such arrests, DHS violated the *Accardi* doctrine and deprived Petitioner of liberty in a manner not authorized by law.

148.    *Habeas* relief is therefore warranted. Petitioner respectfully requests that this Court grant the writ and order his immediate release from ICE custody or, in the alternative,

provide appropriate relief to remedy the unlawful detention resulting from DHS's regulatory violations.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests this Court to grant the following:

1. Assume jurisdiction over this habeas corpus action pursuant to 28 U.S.C. §§ 2241 and 1331;

2. Pursuant to 28 U.S.C. § 2243, issue an order to show cause directing Respondents to file a return within three (3) days, absent good cause for a short extension not exceeding ten days, and set the matter for a prompt hearing;

3. Enjoin Respondents from transferring Petitioner outside the jurisdiction of this Court during the pendency of this action, absent further order of the Court;

4. Declare that Petitioner's continued detention violates the Constitution and laws of the United States, including but not limited to the Due Process Clause of the Fifth Amendment; the equal protection component of the Fifth Amendment; the Suspension Clause of Article I, Section 9 of the United States Constitution; the Administrative Procedure Act, 5 U.S.C. § 706(2)(A); and the Accardi doctrine, based on Respondents' failure to comply with binding immigration arrest regulations;

5. Grant the *writ of habeas corpus* and order Petitioner's immediate release from ICE custody; OR in the alternative, order Respondents to provide Petitioner with a prompt, constitutionally adequate, and individualized custody determination before a neutral decisionmaker with actual authority to order release, at which the government bears the burden of proving—by clear and convincing evidence—that continued detention is necessary to serve a legitimate governmental purpose and that no less restrictive conditions of supervision would suffice;

6. Award Petitioner her costs and reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

7.  Grant any other further relief this Court deems just and proper.

Dated: March 3, 2026

Submitted on Behalf of Petitioner by:

//s//James Hernandez

_____

James Hernandez, Esq.
The James Hernandez Law Firm, PLLC
2412 Woodhead
Houston, TX 77019
james@jhernandezlaw.com
*Attorney for Petitioner*

**<u>VERIFICATION PURSUANT TO 28 U.S.C. § 2242</u>**

I  represent  Petitioner, JUNIOR ALONSO ARCHAGA, and  submit  this verification on her behalf. I hereby verify that the factual statements made in the foregoing Petition for *Writ of Habeas Corpus* are true and correct to the best of my knowledge.


Dated: March 3, 2026                                                      //s//James Hernandez


**<u>CERTIFICATE  OF  SERVICE</u>**

I hereby certify that on March 3, 2026, I filed the foregoing petition for *Writ of Habeas Corpus* electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.


Dated: March 3, 2026                                                      //s//James Hernandez

## ATTACHMENT TO CIVIL COVER SHEET

**I(c) – Attorneys for Plaintiffs:**

James Hernandez, Esq.
The James Hernandez Law Firm, PLLC
2412 Woodhead
Houston, TX 77019
james@jhernandezlaw.com
*Attorney for Petitioner*

**I – Defendants: Kristi Noem**, Secretary of the Department of Homeland Security; **Pamela Bondi**, Attorney General of the United States; **Todd Lyons**, Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; **MIGUEL VERGERA**, in his official capacity as Field Office Director for U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; **WARDEN**, in his official capacity as Warden of the Port Isabel Detention Center.